Here we be, here we be, here we be, the United States Court of Appeals on the 11th Circuit is now in the Court of Appeals. First of all, God save the United States and His Honorable Court. Be seated, please. Good morning and welcome to the 11th Circuit. We're pleased to hear about your cases today and oral argument. I'll just remind you about the timing system. The lights will show yellow when you have two minutes left in your allotted time, and it will turn red when your time is finished. Please quickly conclude your remarks at that time, unless you're in the process of answering a question from the court. Well, let's get right to it. I'll call the first case, number 2314009, Affordable Housing Group v. Florida Housing Affordability. Good morning. May it please the Court. I'm Nikki Popovich. I represent the appellate, Florida Housing Affordability, Inc. We are here today on de novo review of an order of dismissal with prejudice for failure to state a claim upon which relief can be granted on appellate's counterclaim for declaratory judgment. More specifically, whether appellate stated a viable claim that the term of the law ended upon the repeal of Title 12, United States Code, Section 1441AC, by the Dodd-Frank Act. As a reminder for this Court, Section 1441AC is also known as Section 21AC of the Federal Home Loan Bank Act. In this case, whether or not the term of the law ended depends on whether, depends on the party's intent under the law and the meaning of the words prevent the enforcement of under Section 1.101 of the definition of the term in the law, which reads in pertinent part, quote, upon which there is a change in Federal law which prevents RTC or the agency from enforcing this agreement. Further, as provided in the recitals of the law, the party's intent was that the appellate's obligation to comply with certain rent and occupancy restrictions was dependent upon Section 1441AC as amended since the parties contemplated during negotiations that the appellate's obligations under the law could expand, contract, or be extinguished under, by the repeal of Section 1441AC. How long did the contract say it would last? I am so sorry, Your Honor. Can you repeat that? Yes. How long did the contract say the contract would last? Well, Your Honor, it's extinguished. I know the answer. I just want to hear you say it. Your Honor, 40 years. 40 years. So you got a contract, you signed for 40 years. Everybody knows Congress intended, it was no big secret, it was part of the original legislation that the RTC would go out of business shortly. So if that is true, and it is true, why did you anticipate that you would still have to follow that part of the contract for 40 years? Well, Your Honor, there's more to why the contract could end early. Under the term of the definition, it's not just the 40 years. For example, if there is a catastrophic loss on the property before the 40-year end term, then that's going to end it early. If there's a foreclosure. That's wrong. I'm asking why would you contemplate that it could last 40 years if everybody knew the RTC was going to no longer exist in just a few years? Well, the power was transferred to the FDIC, and that happened. So it was transferred to FSLIC and then to the FDIC, which is the successors, and that was contemplated. And that's why you got 40 years in the contract and those obligations. Yes, Your Honor. Successors and authority and responsibilities would exist beyond the very brief term of the RTC. Well, Your Honor, I mean, the contract says more as to why it could end early, and the parties contemplated it. It could end even earlier. But you said if it didn't end even earlier for one of these other reasons, such as foreclosure, et cetera, it would last for 40 years. Correct. And it couldn't possibly last for 40 years unless RTC's authority and responsibility survived RTC. Correct. Okay. So you lose. Well, no, Your Honor. I'm kidding. It's correct, but go ahead. Well, Your Honor, under the statute, I mean, they repelled Section 1441AC, and under subsection C11B, under that part it says that the lower income requirement shall be, quote, judicially enforceable against purchasers of the property under the subsection. They even gave the right for entitlement to attorney's fees if they prevail. So if Section 1441AC is repelled, then there's no authority for the FDIC to move forward on, is what our main argument is with respect to that. And, in fact, 1441AC is the very foundation. Your client's position is we got the money, we knew they were going out, tricked you, yaw, yaw, now these people, we can evict them and get some higher paying rent.  Is that your position? No, Your Honor, that is not our position. The appellate has operated the property in furtherance of affordable housing goals for the AHDP for 31 years out of the maximum of 40 years. Like most property owners dealing with the LORA, they are not-for-profit companies, just as the appellate is. And there's no evidence that the appellate or other property owners will discontinue the provisions of affordable housing. I've seen these not-for-profits. That means there's no owner, per se, or shareholder who will profit. But the folks who are running the profit can make out quite well. And that's what's happened here, or we wouldn't be here. Well, Your Honor, when they did the land deal, there was a negotiation. It was an arm's-length negotiation. And the client, the appellant, understood that if the section 1441 was amended, which prevents the enforcement, then it would end early. It's beyond the appellate's control that this even happened. They were assuming it was going to go on for the 40 years. They were very disappointed when they heard that they would no longer have an obligation to rent to folks who couldn't pay the highest rent. That is not so. Again, they have been furthering the affordable housing goals of the ADHHP since the beginning. For 31 years, they have done this, Your Honor. Let me ask you another question. Yes. Mr. Barr concluded that your reading would render Section 1831Q superfluous. Yes, Your Honor, it would. And, in fact, this is because when the Dodd-Frank Act passed, and this was – so Section 1831Q happened 15 years before the Dodd-Frank Act was passed. Fifteen years later comes the Dodd-Frank Act, and it said that as far as Section 1831, that the FDIC can carry out any remaining authorities and responsibilities of the RTC as set forth in Section 1441A.C. Well, if Dodd-Frank – the Dodd-Frank Act repelled Section 1441A.C., there is no authority left for the FDIC to go forward on the LORA. Congress did not need to specifically address Section 1831Q.N.4 because it repelled, like I said, the FDIC's power and duties. The right part of going forward, counsel, is you contractually bound yourself, you being your client, to go forward. I'm sorry, Your Honor? You contractually bound the client to continue filing these reports. And in addition to the reports, of course, renting to folks who couldn't pay the top rate. That's the agreement. It's a breach of contract, Sue, not a breach of statutory obligation. But, Your Honor, there's no breach of contract if the contract terms itself says that it ends the contract, the LORA, upon the amendment of Section 1441A if the ability to enforce it is gone. And here we are. It was passed on to the successor. FSOIC, FDIC, and now here we are. And I assume you're talking about passed on by Section 1831. But, again, this was – this – Section 1831 says specifically to carry out any remaining authorities and responsibilities. But, again, when Section 1441A.C. was repelled by the Dodd-Frank Act, there's no more remaining authority and responsibilities for the FDIC under the LORA. In other words, FDIC had the authority and duty to carry out any remaining authorities and responsibilities as set forth in Section 1441A.C. And since that was repelled, there's nothing remaining for the FDIC under that statute. Furthermore, the General Savings Clause doesn't extend the FDIC's power under the LORA issue because the parties intended the LORA to end upon a change in federal law preventing the FDIC from enforcing it. How long did FHA continue to pay the compliance fees? To what years? I believe it was 2012. And if I may elaborate a little bit further on that, the appellate requested – and it would be the predecessor of AHG – FHFC to perform a financial feasibility review. And they failed to perform that. So after that, I believe it was in 2014, the compliance report stopped along with the administrative fees from the appellate. Okay, but Dodd-Frank repealed 1441A.C. in 2010. But yet the fees continue to be paid. Up until 2012. And then the FHA notified the appellate that it unilaterally ceased and abandoned its compliance duties in 2015. And that was made public record. So they did pay until 2012. And my understanding is after that, the FHA didn't perform any more reviews, didn't ask for anything. Then comes in AHG, who took over from the predecessors and then brought the suit. That started in state court. Now, even if the court is not convinced of the appellate's contractual interpretation of the LORA issue, when we look to the statutes, the results should be the same. Because, again, Section 1441A.C. was not just an enabling statute. It provided the RTC with enforcement power under subsection C11B. When Congress enacted the Dodd-Frank Act, again, it repealed Section 1441A.C. and all powers and obligations thereunder. Here, because the LORA term ends upon a change in federal law preventing the FDIC from enforcing the LORA, then the LORA therefore ended in 2010 because the entire section of 1441A.C. was repealed by the Dodd-Frank Act, including the subsection that provided the FDIC with judicial enforcement power. Now, this would not be a windfall for the appellate because the parties contracted and agreed that the term could end before 40 years based upon a change in federal law. These were risks that the parties assumed during the negotiation process. The definition of the term itself under the LORA includes reasons before the 40 years that the term can end, and they produce similar results, again, going back to the catastrophic loss. If there's a catastrophic loss and the property owner doesn't rebuild, they keep the insurance payout. If there's a foreclosure and there's a surplus on the foreclosure sale and there's no junior lien holders, they walk away with that. If the property itself becomes an unlivable condition and condemned, the property owner gets to keep that. And, again, the property that is. And, again, as for the low-income families that benefit from the LORA, the appellate, again, is a nonprofit corporation like most affordable housing disposition property owners who has operated the property in furtherance of affordable housing goals of the AHDP for 31 years. Moreover, there is no evidence, again, that the appellate or other owners will discontinue the provisions of affordable housing when the LORA term ends, even at the 40-year mark. So the 40-year contract began before the contract was ever signed? No, sir. It started when the contract was signed. In March 1994? Yes, sir. 2010 years to 2010. You said it reformed for 31 years. That's not 31 years. From 1994. 694 goes to 2000, and I thought they quit performing in 2012. Okay, that was for the compliance as far as the administrative fees and the report. But as far as them offering housing to low-income and very low-income tenants, that has continued the entire time. That has not stopped. How does whoever is now in line to enforce it know that if they breach their duty to file compliance reports? Well, my understanding is that they were supposed to do a financial feasibility review, and that was not done by the FHFC. That would be AHG's predecessor. As far as AHG, I don't have that in the record. You're not answering my question. How do we know they continue to offer this housing to low-income, middle-income folks if we don't have the compliance reports? If you don't have the compliance reports, well, the other way that you would know, obviously, would be if the low-income tenants were to complain that they were not receiving the benefit of the law. That's one way. We don't know if they complained or not. Counsel, we're bound by the record, not by what you say we should assume. Well, what's not in the record here is how would we know, so I can't really answer that much further than that. The answer, if you can't give me any more assurance on how we would know, is we don't know. We don't know. Okay, thank you. Your Honor, I see that my time has expired. Good morning, and may it please the Court. I'm Michelle Agnew-Benny on behalf of Appellee FDIC. Because we are splitting time with AHG, I think I've given instruction to reserve five minutes for AHG's counsel. FHA has tried to frame this as an improper granting of a motion to dismiss because there are factual issues or ambiguities in the LORA, and that premise is not supported by any of their arguments or provisions that they cite in the LORA. The LORA is clear. It specifies when the agreement may terminate prematurely, and this is not one of the specified scenarios. FHA fails to explain how the repeal of RTC's organic statute constitutes a change in law which prevents the FDIC from enforcing the agreement. An ordinary reading of prevents is to deprive of power or stop something from happening. It doesn't make sense to construe the repeal of Section 1441A as depriving the FDIC of power to enforce the LORA because a different statute, Section 1831QN4, gives the FDIC the power to carry out the RTC's affordable housing obligations. As your opposing counsel would point out, 1831Q is giving the FDIC the responsibility to carry out any remaining authority, and then you have the repeal of 1441A, and so opposing counsel is saying that was the remaining authority. Well, Section 1441AC governs the disposition of properties. It means that disposition has occurred, but the remaining obligations, the conditions on which the disposition was made are memorialized in a contract, and there's no indication that Congress intended to abrogate existing contracts entered by the RTC by the repeal of Section 1441AC. But the LORA does say that it's to last a later of 40 years or unless there is a change in federal law which prevents RTC or the agency from enforcing the agreement, so the argument would go with the repeal of 1441A, you can only in 1831Q carry out the remaining authority, so this is a change in federal law. Well, I don't think we need to rest solely on 1831QN4 anyway because the agreement itself is self-contained. The agreement provides enforcement rights. It spells all of them out. We don't need to resort to Section 1441AC to enforce the contract. The FDIC is clearly a successor under the agreement, and FHA does not dispute that, and so we can proceed on our contractual remedies without resort to the statute. Section 1831QN4 is just an indication that Congress did not intend to abrogate existing contracts because if it had intended that, it would render Section 1831QN4 superfluous, and a general principle of statutory construction says that you don't interpret statutes in a way that would render other statutory provisions superfluous. Going back to the point that we don't need to look at Section 1441AC to enforce our rights under the contract, Section 6.1 of the LORA spells out the enforcement rights, and those rights flow to not only the FDIC but also third parties, so construing the repeal of Section 1441AC as abrogating all existing LORAs would also affect the enforcement rights of third parties. It's well established that Congress needs to make a clear statement if it intends to do that. There's no clear statement in the Dodd-Frank Act. It could raise due process concerns to construe the repeal of Section 1441AC as abrogating the LORA. You're suggesting the argument that the LORA income folks, at least the ones in the class, are third-party beneficiaries, and Congress has said kind of in a statutory way that we don't, or maybe it's the case law, we don't affect third-party beneficiary rights unless we say so and repeal it. Yes, exactly. You've got citations for that in your brief. Yes, I believe it's the Lynch case that's cited in our brief that stands for that proposition. We also don't need to resort to Section 1441AC to determine FHA's obligations. All of the obligations are spelled out in the LORA without reference to Section 1441AC. FHA says the agreement somehow made the existence of Section 1441AC a conditioned precedent to enforcement, but the only text FHA cites from the LORA doesn't say that. The LORA references the statute only by way of background, and it's not cited in any of the LORA's operative provisions. Are you relying on the general savings statute at all in your argument? I don't think we need to rely on it. Primarily our argument is a contract-based one. You can look at the LORA and determine whether the FDIC is prevented from enforcement because you don't need to look back to Section 1441AC to enforce any of the obligations under the contract. The general savings statute is another additional way of looking at it, I suppose, but I don't think it's essential. I guess going back to that, we think that the district court's analysis was sound. Finding that the repeal of RTC's organic statute terminated the agreement would affect the rights of others. It would render Section 1831QN4 superfluous. Both of these are things that we'd expect to see a clear statement from Congress of intent to do if that is what Congress intended, and we see nothing of the sort in the repeal of Section 1441AC. There is this argument that FHA raised that there is no authority for the FDIC to move forward on. Again, the LORA defines the FDIC as a successor. They haven't disputed that. Section 6.1 of the agreement spells out the FDIC's enforcement rights. That's where the authority stems from. There's nothing in the repeal of Section 1441AC that would indicate that this contractual authority has been eradicated and that, in short, they've shown no ambiguity in the contract that would require a resort to determining the subjective intent of the parties. The recitals don't say anything that would indicate that the parties anticipated that the agreement would terminate upon the repeal of Section 1441AC, and it's clear from the agreement itself that the parties contemplated that there would be a change in the agency administering the agreement because the RTC Completion Act, as was noted before, had already been passed at the time that this agreement was executed, and all of the parties understood that the RTC would not be the one seeing this agreement through to the end. I see that I have two minutes left. If I could, I'd like to offer that time to Mr. Clem if there are no further questions for me. Okay, thank you. Thank you, May. Please, the Court. Russell E. Clem for the appellee for the Affordable Housing Group. I'd like to point out a couple of things. First of all, Judge Dalton very correctly based his ruling basically on statutory interpretation, we did not have to go to contract interpretation. I realize this panel sits and reviews de novo. If we go to contractual interpretation, I feel that the appellant is cherry-picking language to suit its purposes and to make what is otherwise a framework and a structure, a statutory structure, superfluous and meaningless. By that, I mean if you look at the act, if you look rather at the law itself, it states that the termination provision, it defines the act, first of all, as Section 21A of the Federal Home Loan Bank Act, as amended or any corresponding provisions or succeeding law as it or they may be amended from time to time. Appellant spends very little time in terms of 1831Q and 1881QR. I believe that that is determinative. There was clearly a framework under 1831Q, not just to say you take over. There was a program that was set forth in that statute to integrate the FDIC programs with the RTC. They were taking them over. They were running them. There was an interim period. There is clearly a statutory intent to continue the enforcement of these laws, the enforcement of the fair housing responsibilities of the RTC by way of the FDIC. Term. This is the one issue that the appellant relies on. There is a section, the definitions of the LORA. 1.0, term. The date on which there is either the 40-year or 50-year existence of the building or upon which there is a change in Federal law which prevents. The word is prevents, and I don't see where the repeal of 1441A prevents anything. It prevents the RTC or the agency, and please understand, the appellant brief indicates the appellant does not dispute the authority of the FDIC to administer fair housing programs. They just think this LORA has gone. It's evaporated. But it states that the termination is upon which there is a change in Federal law which prevents RTC or the agency from enforcing this agreement. Nowhere in that provision, the definition of term, does it refer back to 1441A. That's just a preliminary statement in the contract itself. It doesn't govern. There was some reference to the general savings statute. The general savings statute, 1 U.S.C. 109, clearly has an impact, clearly that statutory interpretation that would not allow the repeal by the Dodd-Frank Act of this statute to terminate what is a Federal program that clearly meant to continue the enforcement authority of the FDIC and its agencies. I'll conclude with this. There are currently approximately, well, there are over 600 current laws in effect throughout the United States. The appellee agency does not manage all of them. It manages some in many states across the country. To state the interpretation that the appellant has given towards the Dodd-Frank Act as repealing any authority to enforce laws is misguided. It's not supported by statutory interpretation and it's not supported by the facts of this case. Counsel, are there 600 other laws in effect or operation, arguably, around the country? Yes, Your Honor. Does that mean that if their position is right, all of those agreements, under all of those agreements, there's an abrogation of duty to comply? It does not, Your Honor, but it could mean hundreds of them would just be unenforceable. Depending on the contents of the contracts? Correct. Many of the laws do have the term definition that are the same in this law. Do you know if this issue has been raised in any of those other cases? It has been raised in other cases. We haven't found it for my agency, which has been doing this for 20 years. My client has not seen this happen before. We have no other case law. I was just trying to figure out whether we need to publish opinion in this case. I guess with 600 other agreements out there, we probably do. One way or the other. Yes, Your Honor. Thank you. Thank you. Thank you, Your Honor. May it please the Court. In one sentence, when the Dodd-Frank Act repealed Section 1441AC, it repealed the judicial enforcement power under subsection C11B, ending the LORA issue because the definition of the LORA's term under Section 1.101 reads that it ends upon a change in Federal law which prevents the enforcement of the LORA. And that was the Dodd-Frank Act. The appellees talk about there is nothing in the LORA to support the appellate's position. However, the recitals specifically cite Section 1441AC, and the definition for the term ending cites that as well, what we're talking about. So there is stuff in the LORA that supports the appellate's position. Further, as for the FDIC's assertion that it can force the LORA by law or equity, appellate submits that it cannot enforce the LORA if the term has ended by contractual agreement due to the repeal of Section 1441AC. As far as the ambiguity, appellate is not arguing ambiguity. Appellate believes that the LORA is plain and clear regarding when the term ends. Appellate is arguing in response to the appellate's FDIC's, excuse me, the FDIC's interpretation of the LORA. And if there is more than one reasonable interpretation of when the LORA ends, then it would be considered as ambiguous requiring further examination by the court. As far as the Lynch case goes, there is no application here with Lynch because that dealt with the yearly renewable term life insurance under the War Risk Insurance Act. I am not seeing the correlation between this case and the case, between that case and the case at bar. The appellate has stated a viable claim upon which relief can be granted since it alleged sufficient facts in its pleading which, if accepted as true regarding the party's intent and interpretation of the LORA, states a counterclaim for declaratory judgment that the term of the LORA has ended. The appellate's counterclaim is plausible on its face and should not have been dismissed for failure to state a claim. I believe that the court should have proceeded forward. Now, whether the FDIC proceeded on the declaratory judgment claim and then if the FDIC wanted to raise it in a motion for summary judgment and make their argument then, but on the pleadings, it should have gone forward because the appellate raised sufficient facts that were plausible to support its position for declaratory judgment that the term of the LORA ended. If it had gone forward, any discovery would have been appropriate or necessary? Possibly, because as the appellee stated, they claim that there was over 600. I believe in the brief they stated there was just 300, so I'm not sure. I'm not even sure if that number was the original number that. Well, if they're saying, the appellate is claiming that this is really, this LORA goes to their LORA. As the appellee states, it could exceed this LORA and go on to other LORAs as well. So that's why, especially if it has these same words in it regarding when. It could go on to others. Meaning that other, other, other property owners who are, who have signed the LORA, this could extend to them as well depending upon what the contract says. 300, let's take the lower number of them out there and this issue isn't embedded in at least some of them. I mean, it could be. I won't deny that, Your Honor, but I cannot verify that it's been 300, that there's 300 or 600. I was just trying to get a feel for whether we needed to publish any opinion or not, and I'm convinced we do. But either way, we've got to get it right whether it's 100 or 600. Well. We've got to do our best to get it right. I see my time has expired, Your Honor. Does the court have any further questions of me? No. Thank you.